IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| REGAL WEST CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>GARRY NEEVES, )<br>)<br>Defendant. )<br>_____ ) | No. 2:22-cv-01653-DCN<br><br>**ORDER** |

The following matter is before the court on defendant Garry Neeves's ("Garry") motion to stay, ECF No. 15, 17. For the reasons set forth below, the court grants the motion to stay.

## I. BACKGROUND

Plaintiff Regal West Corporation ("Regal West") brought this action against Garry as a result of his actions while an executive of Regal West. Regal West is a family company: its founder Roque Neeves involved both of his sons, Garry and Rand, in the business. Id. ¶¶ 1–6. The complaint alleges that Garry, a former executive of Regal West, exceeded his authority as Vice President, breached his fiduciary duties, and stole Regal West's "most sensitive trade secrets, business know-how, and intellectual property for use in another venture, Retail Exchange Network, Inc., [("RXN")] of which Garry is a 50% shareholder and for which he now serves as CEO." ECF No. 1, Compl. ¶ 9.

The parties have filed three separate lawsuits litigating these claims. The other two cases are in active litigation in the United States District Courts for the Central District of California and the Western District of Washington. Softketeers, Inc. v. Regal West Corp., et al., No. 8:19-cv-00519 (C.D. Cal.) (the "California Action"); Regal West

1

Corp. v. Minh Khai Nguyen, et al., No. 3:19-cv-5374 (W.D. Wash) (the "Washington Action"). The instant action (the "South Carolina Action") is the most recent case—Regal West initiated the Washington Action in May 2019 and Softketeers, Inc. ("Softketeers")[1] initiated the California Action in March 2019. Consequently, all three court cases (the California Action, the Washington Action, and the South Carolina Action) involve interrelated parties and the same overarching dispute: who owns the software.

Regal West filed its complaint against Garry on May 25, 2022. Compl. The complaint alleges four causes of action: (1) breach of fiduciary duty under the common law; (2) breach of fiduciary duty under S.C. Code Ann. § 33-8-300; (3) violation of the Defend Trade Secrets Act under 18 U.S.C. § 1836(b); and (4) violation of the South Carolina Trade Secrets Act under S.C. Code § 39-8-30. Id. ¶¶ 78, 83–84, 93, 101. Garry filed a motion to stay proceedings on July 20, 2022, requesting the South Carolina Action be stayed until the California Action and its appeals are resolved. ECF No. 15. Garry filed a supplemental motion to stay regarding the prior motion to stay that same day. ECF No. 17. Regal West responded in opposition to the motion to stay on July 28, 2022, ECF No. 18, and Garry replied to that response on August 4, 2022, ECF No. 19. As such, the motion has been fully briefed and is now ripe for review.

---

[1] Softketeers is a software business based in California whose CEO, sole director, and shareholder is Minh Khai Nguyen ("Nguyen"). For two decades, Nguyen developed the software for Regal West. Compl. ¶ 30. In that time, Nguyen, Garry, and Rand Neeves formed the company MGR Software that embodied Regal West's trade secret know-how, but the company never got off the ground. Id. ¶¶ 32–33. Nguyen and Garry thereafter formed RXN—a software solution company.

## II.  STANDARD

"A court has the power to stay proceedings, which is 'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" Doe v. Bayer Corp., 367 F. Supp. 2d 904, 914 (M.D.N.C. 2005) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)).  In exercising its authority to grant a discretionary stay, the court "must weigh competing interests and maintain an even balance." Landis, 299 U.S. at 254, 255 (internal quotation omitted).  Furthermore, "[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983).  "When considering a motion to stay, the district court should consider three factors: '(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party.'" Impulse Monitoring, Inc. v. Aetna Health, Inc., 2014 WL 4748598, at *1 (D.S.C. Sept. 23, 2014) (quoting Johnson v. DePuy Orthopaedics, Inc., 2012 WL 4538642, at *2 (D.S.C. Oct. 1, 2012)).  In practical terms, "the court should consider: (1) whether discovery is complete and a trial date is scheduled; (2) whether a stay would simplify the matters at issue; and (3) whether a stay would unduly prejudice or clearly disadvantage the non-moving party." SafeRack, LLC v. Bullard Co., 2018 WL 3696557, at *1 (D.S.C. Aug. 3, 2018) (quoting NAS Nalle Automation Sys., LLC v. DJS Sys., Inc., 2011 WL 13141594, at *1 (D.S.C. Nov. 23, 2011)) (internal quotations omitted).

Further, a District Court "may [] stay[] [a case] to abide the proceedings in another" even if the parties to the two causes and the issues are not identical. Landis, 299

U.S. at 254. Indeed, a "plaintiff [is] not entitled as a matter of right to have two federal courts trying the same issue at the same time when court dockets are crowded and other litigants have right to a hearing, or, after having brought a suit in the [first] court against the principal infringer, to try the case piecemeal by having another court pass on the principal issue there involved." Int'l Nickel Co. v. Martin J. Barry, Inc., 204 F.2d 583, 586 (4th Cir. 1953).

### III.   DISCUSSION

The crux of the issue in this case deals with to what extent the software's ownership impacts the four claims in this case. If those claims are at all dependent upon Regal West owning the software at issue, and if the California Action is providing a forum to settle that ownership, then this case warrants a stay to prevent duplicative legal disputes that waste judicial resources. But, if the claims in the instant case are unrelated and unaffected by the conclusions of the California Action, then it would unduly prejudice Regal West to grant an indefinite stay pending exhaustion of the California Action.

In his motion to stay, Garry argues that the California Action will determine the true ownership of the disputed software—which is Regal West's basis for its claims against Garry. ECF No. 15 at 5. To date, the California Action has gone to a jury trial with the jury finding in favor of Softketeers that Regal West and Rand Neeves improperly profited from the use of the copyrighted software. Softketeers, Inc. v. Regal West Corporation, 2021 WL 5532547 (C.D. Cal. Sept. 24, 2021) (verdict form). However, that action has not been finalized, as post-verdict proceedings are ongoing and Regal West is expected to appeal the verdict. ECF No. 15 at 5. Garry argues that the instant action should be stayed pending the finalization of the California Action because

4

the claims in the South Carolina Action arise from the alleged secret misappropriation of the same disputed software. If Regal West never owned the software, then Garry never misappropriated Regal West's trade secrets nor breached any fiduciary duty to the company.

Garry requests the court enter an order staying the South Carolina litigation pending at least the final resolution of the California Action, including any subsequent appeals. Garry argues "it would be inefficient to the Federal judicial system and patently unfair to [Garry] to litigate this underlying factual issue twice, in two different states, at the same time." ECF No. 15 at 5–6. Such litigation would impose significant unnecessary litigation costs for Garry for claims that will already be resolved, in significant part if not in total, upon the completion of the California Action. Id.

In response, Regal West argues Garry's actions in the instant action were wrong no matter the outcome of Regal West's litigation with Softketeers. ECF No. 18. Specifically, Regal West emphasizes that Garry is not a party to the California Action and a side-by-side comparison of the various claims in each case show clear differences and distinct elements to prove. See ECF Nos. 18 at 6–7; 18-1. Further, Regal West asserts that Garry has failed to establish that he would experience significant hardship if the action were permitted to more forward now, or that Regal West would not be prejudiced by his proposed multi-year delay.

Garry challenges Regal West's analysis of the claims in the California Action and the South Carolina Action and argues that Regal West fails to consider "the obvious and requisite underlying issues in each, which intertwine the claims and parties." ECF No. 19 at 1. Rather, Regal West's assertion that the issues in this action are "unique and

independent" is unsupported by fact or law—all the cases are contingent upon resolution of the software's ownership.  Id.  Further, Garry asserts that if the California Action finds the software to be owned by Softketeers, then Regal West would have no standing to sue for something it has no ownership interest in and the claims in this action would fail.  Id. at 4.

Finally, Garry points to the reasoning behind the order to stay in the Washington Action, where Judge Lin found it was futile to decide issues still in dispute until they were resolved in the California Action because the claim in the Washington Action turned on that resolution.  Id. at 5.  The Washington court also considered and rejected Regal West's second proposed amendment of the complaint as untimely.  There, Regal West filed a motion for leave to file a proposed second amended complaint to join both RXN and Garry as additional defendants in March 2022.  Washington Action, ECF No. 102.  The court denied that motion because the court-ordered deadline to join additional parties was March 15, 2020, and Regal West did not show good cause for relief from the joinder deadline.  Washington Action, ECF No. 116.  Specifically, Regal West admitted they learned of Garry's potential involvement in approving certain contested actions of RXN as early as May 2020[2]—yet Regal West did not seek to amend the complaint to add him as a party until almost two years later.  Id. at 7.  The court denied Regal West's motion to amend on May 9, 2022.  Id.  Two weeks later, Regal West then filed the South

---

[2] In the California Action, Regal West took Garry Neeves's deposition on January 30, 2020.  Regal West asserts that his deposition did not put them on notice regarding his alleged misconduct, but instead the company became aware of Garry's actions when Nguyen was required to provide discovery relating to RXN in the Washington Action in May 2020.  Washington Action, ECF No. 55.

6

Carolina Action asserting claims against Garry—eerily similar claims to those the Washington Court declined to allow as untimely.³ See id.; Compl.

### A.  Motion to Stay

"When considering a motion to stay, the district court should consider three factors: '(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party.'" Impulse Monitoring, 2014 WL 4748598, at *1.  The court examines each factor in turn.

#### 1.  Judicial Economy

Garry argues that a stay in this case will clearly promote judicial economy, because the resolution of the California Action will simplify all of the issues if not settle them.  ECF No. 19 at 9.  If the court in the California Action determines that Regal West does not own the software, then there is no basis for any of the four claims against Garry in the instant action.  Id.  The actions in California, Washington, and now South Carolina are inextricably intertwined and therefore resolution of one will simplify the resolution of the remaining two.  Id. at 10.  Further, it would be "unquestionably desirable" that the software ownership issue—key to each of the pending actions—be tried "in the action which had been first instituted" and where it is most convenient to parties, counsel, and

---

³ The causes of action sought against Garry Neeves in the proposed amended Washington complaint are the following: (1) trademark counterfeiting and infringement in violation of the Lanham Act, 15 U.S.C. § 1114; (2) false designation of origin and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (3) violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b); (4) violation of[?] Washington Trade Secrets Act, Wash. Rev. Code § 19.108.010; (5) violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202; (6) breach of fiduciary duties under common law; (7) breach of fiduciary duties under RCW 23B.08.300 and RCW 23B.08.420; and (8) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), 1962(d), and 1964(c).  Washington Action, ECF No. 103-1 at 23–33.

relevant witnesses. ECF No. 15 at 9 (quoting Int'l Nickel, 204 F.2d at 585–86). Here, that would be the California Action. Id.

In contrast, Regal West argues that a stay only delays the inevitable litigation of this matter and would do "nothing to simplify or streamline the issues." ECF No. 18 at 12. Regal West further asserts that the cases are "markedly different" but beyond attaching copies of the complaints in the California Action, ECF No. 18-1, does little to engage with Garry's argument that the underlying ownership of the software directly impacts whether trade secrets were misappropriated, or fiduciary duties breached if Regal West never owned those trade secrets. See id. at 5–9; 12. Regal West rests much of their argument on the fact that Garry is not a party to the California Action and that the California Action does not include any breach of fiduciary duty claims. Id. at 7–9. Consequently, Regal West contends "there is no overlap between the claims or issues in dispute in this case and those at issue in the California Action warranting a stay of this matter." Id. at 8. But, Regal West's conclusion misstates the law; a court may stay a matter even if the issues and parties are not identical. See Landis, 299 U.S. at 254. Under this prong, the relevant question is whether staying this action would streamline the issues or moot any issues pending resolution of this action. See Mears Grp., Inc. v. Kiawah Island Util., Inc., 2019 WL 5395963, at *7 (D.S.C. Oct. 22, 2019).

Here, Regal West claims under both trade secrets causes of action that Garry gained access to Regal West's "business processes and know-how embodied in its custom software, its customer database, and its customer-coding system" and misappropriated those trade secrets for his own use. Compl. at 17–19. The California Action concerns whether Softketeers or Regal West owns the Warehouse Management

8

Software. ECF No. 18-1 at 4–5. The trade secrets claims here are directly affected by the California Action. For example, only the "<u>owner</u> of a trade secret that is misappropriated" has standing to bring a private civil action under the Defend Trade Secrets Act. 18 U.S.C. § 1836(b) (emphasis added). Similarly, the South Carolina Trade Secrets Act provides a cause of action to "[a] person aggrieved by a misappropriation, wrongful disclosure, or wrongful use of <u>his</u> trade secrets." S.C. Code § 3908-30(C) (emphasis added). Therefore, these two causes of action alone require Regal West to demonstrate its ownership over the trade secrets at issue—and Regal West has failed to explain how exactly their trade secrets differ or are separate from the ownership of the software. On those two claims alone, resolution of the California Action would substantially simplify the instant case.

Similarly, the fiduciary duty claims rest on the assertion that Garry breached his duty of loyalty, duty of care, and the duty to act in good faith by misappropriating Regal West's trade secrets and using them for his own gain. Compl. at 16–17. The core of these two claims turns on the trade secrets misappropriated and to what extent Regal West owns trade secrets separate from the ownership of the underlying software. If the trade secrets are the software, then resolution of the California Action would in fact save the court time and resources by not relitigating the issue currently before another district court.

Regal West attempts to address this issue of settled ownership in a footnote, saying,

> Softketeers may be adjudged to own . . . the software, but may still not have the right to publish that software onward to others without removing Regal's proprietary information or otherwise obtaining Regal's authorization. The California Action only addresses whether Softketeers

9

may prevent Regal from using the software; not whether Softketeers may distribute it to others.

ECF No. 18 at 8 n.3. But Regal West undercuts their own claim to ownership and judicial efficiency by admitting, "Regal's counterclaims seeking declaratory judgment regarding its ownership interest in the action remain before the trial court and will be addressed, in the first instance in the California Action, by the District Judge." Id. at 8 n.2; California Action, ECF No. 839. Since the California Action is currently resolving the issue of ownership, and that ownership impacts the South Carolina Action, then it makes sense to stay this action until the declaratory judgment is ruled upon, if not until the California Action is fully exhausted.

The court finds granting the motion to stay in the interests of promoting judicial economy because the stay would clearly simplify the issues in this case.

### 2. Hardship and Equity to Moving Party if not Stayed

Garry asserts that should this matter not be stayed he will be forced to incur significant, unnecessary litigation costs for claims that will already be resolved by the California Action. ECF No. 19 at 6. Further, it would be inequitable to allow Regal West to pursue duplicative claims against Garry given that Regal West has not been diligent or timely about pursuing claims against Garry—Regal West could have joined him as a party to the California Action but chose not to. Id. at 6–7.

Regal West argues that Garry's assertions regarding legal costs lack merit because he is not a party to the California Action and therefore is not incurring legal costs beyond the South Carolina Action. ECF No. 18 at 9. Since Garry has not met his burden to provide the court with clear and convincing evidence of legitimate hardship and because Garry is silent as to the details of "significant, unnecessary litigation costs" he might

incur, Regal West argues the court should not find that Garry faces hardship sufficient to stay the action.  Id. at 9–10.

  While Garry is not a party to the California Action and Regal West correctly points out that he will not face ongoing costs in that action, Regal West fails to address the costs of litigating those issues in the instant case, if they could be settled by the California Action.  Garry's legal costs incurred in this action are entirely relevant if the action needlessly proceeds and thus, Garry's argument regarding unnecessary legal costs has merit.

  As a matter of equity, Regal West failed to timely join Garry as a party in the California Action or Washington Action.  As described above, Regal West admitted in the Washington Action they had notice of Garry's actions as early as May 2020.  Yet, they did not seek to amend their complaint in the Washington Action until March 2022.  Regal West's amended complaint sought to bring claims against Garry that are almost identical to the claims Regal West now seeks to bring in this action.  In fact, the South Carolina Action was filed just two weeks after the Washington court denied Regal West's motion to amend.

  Finally, the court notes that trial has not yet been set in the instant case, meaning Regal West would not suffer prejudice by a stay during the final stages of litigation since this case is at a preliminary stage.  See Mears Grp., 2019 WL 5395963, at *9.

  The court finds that not staying this action would cause hardship (e.g., costly legal fees) for Garry.  Further, not staying this action would be inequitable to Garry because it is Regal West's second, if not third, "bite at the apple"—had Regal West wished to bring these claims against Garry it could have done so as early as May 2020 in either the

California Action or the Washington Action. Regal West chose not to. The court is unwilling to allow Regal West another untimely bite at the apple.

### 3. Potential Prejudice to the Non-Moving Party

Courts have found that a delay of a few months is significant and contributes to prejudice suffered by the non-moving party. Mears Grp., 2019 WL 5395963, at *9 (citing Sehler v. Prospect Mortg., LLC, 2013 WL 5184216, at *3 (E.D. Va. Sept. 16, 2013).

Garry contends that granting a stay will not unfairly prejudice Regal West because any delay Regal West faces is due to its own lack of diligence. ECF No. 19 at 7. Specifically, Regal West delayed too long past the joinder deadline to assert claims against Garry in the Washington Action and upon that court's denial of joining Garry to the case, Regal West only then filed the South Carolina Action. Id. at 7–8. Regal West had a proper avenue for years but failed to utilize it to assert its claims against Garry. Id. Additionally, there is no prejudice as it relates to Regal West's thwarted opportunities for injunctive relief because that relief is contingent upon Regal West's showing that they in fact own the trademark secrets and other proprietary information—an issue currently under consideration and pending resolution in the California Action. Id. Finally, Garry asserts that the length of the stay should be immaterial as that length depends entirely upon how long Regal West is willing to contest the result in the California Action. Id. at 8–9.

Regal West, in contrast, argues they will be prejudiced in two ways: (1) a stay will prevent them from seeking affirmative relief necessary to protect their trade secrets, and (2) a lengthy delay will create evidentiary prejudice to Regal West whereby

information is more likely to be lost or destroyed and witnesses' memories to fade or become unavailable. ECF No. 18 at 10. Further, the length of this delay—until exhaustion of appeals in the California Action—would severely prejudice Regal West because the delay would last years and be tantamount to an indefinite stay. Id. at 11.

The importance of the California Action's decision and impact of that holding on all four causes of action in the instant case justify the delay that a stay would cause. Additionally, Regal West's lack of diligence in pursuing its claims against all relevant parties in either of the prior cases that pre-date the South Carolina Action minimizes any prejudice that might result from allowing the stay. Ultimately, any prejudice is outweighed because a stay enables the parties to resolve the interrelated factual claims in the first forum.

Given the consideration of each of the factors in the instant case, the court grants the motion to stay.

### IV.  CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to stay.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**October 14, 2022**
**Charleston, South Carolina**